IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Kenneth Baxley, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No.: 4:09-2287-TLW ) |
| SB Mulch, Inc., Landscape Outlet Store, Matthew Johnson and Cecil Johnson, | ) ) ) |
| Defendants. | ) ) ) |

# ORDER

This matter is now before the Court for consideration of the motion for summary judgment filed by SB Mulch, Inc., Landscape Outlet Store, Matthew Johnson, and Cecil Johnson, ("defendants"), filed on September 1, 2010. (Doc. # 41). Kenneth Baxley, ("plaintiff"), filed a response in opposition on October 18, 2010. (Doc. # 52). The defendants filed a reply on November 1, 2010. (Doc. # 55). The Court has carefully considered the motions, memoranda, and exhibits submitted by the parties, and drawn all reasonable factual inferences in favor of the non-moving party.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing this Court of

1

the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the moving party bears this initial responsibility, the nonmoving party must then produce specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 334. In satisfying this burden, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, it must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## FACTS

The plaintiff initially brought this suit in state court. The defendants removed the case to federal court based on this Court's original jurisdiction over the claims asserted, pursuant to 28 U.S.C. § 1331. The plaintiff pleads three causes of action in his complaint: 1) wrongful retention of wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA") 2)

wrongful termination in violation of a clear mandate of public policy, and 3) retaliation for reporting violation of the FLSA. (Compl. at 3-8).

The plaintiff alleges that "SB Mulch Inc., Landscape Outlet Store, Mathew Johnson and Cecil Johnson were the plaintiff's employer(s) . . . ." and that he worked for the defendants from the fall of 2005 until June of 2009. (Compl. at ¶ 12-13). He argues he never received overtime pay while employed, that he repeatedly told the defendants he had not received any overtime wages, and that the defendants intentionally and willfully refused to pay him any overtime wages. (Compl. at 14-16). The plaintiff also contends he was wrongfully terminated by the defendants in retaliation for reporting unlawful activity to his supervisor Cecil Johnson and Matthew Johnson. (Compl. at 20-21).

Subsequent to his termination, the plaintiff filed for unemployment benefits in June of 2009. (Compl. at 30). The plaintiff asserts that "as a part of the unemployment process the Plaintiff was required to disclose his wages which showed that he had not received time and a half for the overtime hours he had worked." (Compl. at 30). He argues the defendants began threatening and harassing the plaintiff and the plaintiff's son because the plaintiff applied for unemployment benefits, complained to defendants "about the Defendant(s) violation of the Fair Labor Standards Act concerning his overtime wages," and reported "the Defendant(s) willful and malicious violations" of the FLSA. (Compl. at ¶ 30-34). The plaintiff contends the harassment took the form of repeated telephone calls to the plaintiff's home and to the cell phone of the plaintiff's son, including four calls to the plaintiff's house and two calls to the plaintiff's son on July 2, 2009, after the defendants knew the plaintiff had retained counsel. Additionally, the plaintiff contends "Matthew, Cecil and Bruce Johnson drove to Plaintiff's house in effort to get the Plaintiff to drop his lawsuit . . . ." (Pl.'s Resp. in Opp. at 2).

The plaintiff explained the nature and dates of these phone calls in his deposition. (Pl.'s Ex. 15 at 98-100). The plaintiff also noted in his deposition that the defendants told "everybody I stole from him," and that when potential employers would call the defendants, the defendants would inform the potential employer that the plaintiff's employment was terminated for stealing. Id. at 100-101. Finally, the plaintiff has submitted an affidavit from his son stating he "received two phone calls from Cecil Johnson on July 2, 2009" and "also received a call from Matthew Johnson on July 2009 at 2:35 PM in which Matthew left a threatening voice message on my phone." (Pl.'s Ex. 14). The affidavit also states that Cecil Johnson left a threatening voice message in June of 2009, stating that "Kenneth better call him or my father would not get any unemployment benefits." Id.

The defendants cast the facts in a different light. First, the defendants argue that, contrary to the plaintiff's assertion, the plaintiff was fired because of repeated inventory shortages of pine straw, mulch, and watermelons. (Def.'s Ex. 14 at 11-12, 29), (Def.'s Ex. 15 at 69-70, 75), (Ex. 16). The defendants contend that, even after discussing this issue with the plaintiff, the inventory shortages persisted. (Def.'s Ex. 18-19 at 70, 75-77). According to the defendants, it was for this reason that the plaintiff was fired, and not because the plaintiff made inquiry into overtime pay. (Def.'s Ex. 20 at 29), (Def.'s Ex. 21 at 61). The defendants note that the plaintiff, by his own admission, never talked to any of the defendants about overtime pay prior to his termination. (Def.'s Ex. 23 at at 96-97).

## **DISCUSSION**

### I.     **Defendants SB Mulch, Matthew Johnson, and Cecil Johnson**

The defendants argue that summary judgment should be granted in favor of defendants SB Mulch, Matthew Johnson, and Cecil Johnson because the plaintiff has failed to present any

4

evidence that he was ever employed by these particular defendants. The defendants state that the Payroll Transaction Detail of Sod Busters and SB Turf show that the plaintiff was employed by Sod Busters and then SB Turf from December 2005 through February 2009. (Def.'s Ex. 27-30). The defendants state that after the plaintiff's employment with SB Turf, he began working for Landscape Outlet Store until his termination on June 10, 2009. (Def.'s Ex. 31-32). Therefore, the defendants assert that the plaintiff was never employed by SB Mulch, Matthew Johnson, or Cecil Johnson.

As to Matthew and Cecil Johnson, the plaintiff argues that he has at all times worked for both Cecil and Matthew Johnson who are the owners of SB Mulch and the Landscape Outlet Store. (Pl.'s Resp. at 3). He also alleges that Cecil and Matthew Johnson were "his bosses the entire time he worked for the Defendant(s)." Id. Further, the plaintiff notes that he worked for these defendants for years, reported every morning to their office, and that these defendants have control over SB Mulch Inc., and the Landscape Outlet store. Id.

The defendants in their reply argue there is no evidence demonstrating the plaintiff was ever employed by these individuals during the relevant timeframe. Additionally, they contend the corporate form should not be disregarded, and argue that there is no basis to pierce the corporate veil. The plaintiff asserts Cecil and Matthew Johnson may be held liable individually. It does not appear that the plaintiff has asked this Court to pierce the corporate veil.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Further, "Employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). This Court notes, "[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to

effectuate its goals." Schultz v. Capital Int'l Security Inc., 466 F.3d 298, 304 (4th Cir. 2006) (quoting Benshoff v. City of Virginia Beach, 180 F.3d 136, 140 (4th Cir. 1999).

At least one district court from the Fourth Circuit has held it is possible to hold one liable in their individual capacity for FLSA violations of a corporation. The Court in Pearson v. Professional 50 states Protection, 2010 WL 4225533 (D.Md. 2010) held, "There is substantial authority for courts to hold liable as employers individuals with varying amounts of equity and control over the entities and activities before the courts in FLSA cases." (citing cases). That Court determined that it was unnecessary to pierce the corporate veil to hold one personally liable for FLSA violations. Id. (citing Donovan v. Agnew, 712 F.2d 1509, 1512-14 (1st Cir. 1983). It was further noted that "individual liability of a corporate officer or shareholder is dictated by the economic reality of the employment relationship." Id. (citing Donovan at 1513).

This Court finds the authority cited persuasive. See also Brock v. Hamad, 867 F.2d 804, 809 n.6 (4th Cir. 1989) (noting that "employer" as defined in the FLSA clearly includes Hamad, an individual, as an employer and stating that "it is not disputed that he hired and directed the employees who worked for the enterprise." (citations omitted)). Further, this Court concludes that given the evidence of record that Cecil and Matthew Johnson may have exercised economic and operational control over the employment relationship between them and the plaintiff, there is a genuine issue of material fact as to whether these individuals may be considered "employers" under the FLSA. See Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009). Relevant to this decision are the facts of record that Cecil and Matthew Johnson are the owners of the company, have the authority to hire and fire, appear to have operational control over the company, and determine the salary and responsibility of the company's employees. See Id. Accordingly, this Court finds, reviewing the record in a light most favorable to the plaintiff, that there is a genuine

issue of material fact as to whether the defendants Cecil and Matthew Johnson are liable for the alleged violations of the FLSA.

The defendants also contend that summary judgment should be granted in favor of SB Mulch because there is no evidence that the plaintiff was ever employed by SB Mulch. This Court determines that, at this time, it cannot conclude that there is no genuine issue of material fact as to whether the plaintiff actually worked for SB Mulch. Since there is a factual issue as to whether the plaintiff did any work for SB Mulch, this Court denies the motion for summary judgment in favor of this defendant.

## II.     Retaliation

The FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. 215(a)(3). It is noted that this provision "effectuates enforcement of the Act's substantive provisions by removing 'fear of economic retaliation' so that employees need not 'quietly . . . accept substandard conditions.'" Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008) (citing Mitchel v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 292 (1960). Further, "[W]e must interpret the retaliation provision bearing in mind the Supreme Court's admonition that the FLSA must not be interpreted or applied in a narrow, grudging manner." Id. (quoting Ball v. Memphis Bar-B-Q co., 228 F.3d 360, 364 (4th Cir. 2000)).

To establish a claim for retaliation under the FLSA a plaintiff "must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity' and (3) a causal connection

7

exists between the employee's activity and the employer's adverse action.." Id. (citing Wolf v. Coca-Cola co., 200 F.3d 1337, 1342-43 (11th Cir. 2000).

The defendants contend that summary judgment should be granted in favor of all named defendants because the plaintiff has failed to establish the factors required to succeed on a retaliation claim. The defendants argue that the plaintiff has presented no evidence demonstrating that he was engaged in a protected activity while employed by the defendants. The defendants contend the plaintiff has not presented any evidence showing he took any affirmative steps to recover overtime pay while employed by the defendants, or that he even informed any of the defendants or a federal administrative agency of his entitlement to overtime pay while employed by the defendants. The defendants point to the plaintiff's own deposition to for proof. The plaintiff's deposition reads:

    Q:  When was the first time that you said you're due overtime?

    A:  Do what now?

    Q:  When was the first time that you told anyone at the sod farm or the outlet store that you were due overtime?

    A:  I never had a choice to tell nobody nothing at the Sod Busters, Landscape Outlet Store, or no other time. They were the boss. They told you what to do if you wanted to work for them.

    Q:  Okay. So you never talked with Cecil Johnson about being owed overtime?

    A:  No.

    Q:  And you never talked to Matthew Johnson about being owed overtime?

    A:  No, ma'am.

    Q:  Did you ever talk to Catherine Johnson about being owed overtime?

    A:  No, ma'am.

(Def.'s Ex. 23).

Therefore, the defendants argue that the plaintiff's termination could not have been motived by the plaintiff's claim of entitlement to overtime pay.

In response, counsel for the plaintiff states, "The plaintiff had worked for and been a good employee of the Defendant(s) since 2005 and then was suddenly terminated in June of 2009. Clearly the Defendant(s) and the Plaintiff had conversations regarding the Plaintiff's wages and hours to be worked." (Pl.'s Resp. in Opp. at 9). There is no specific citation to the record to support this statement or to refute the plaintiff's own testimony at deposition. However, the plaintiff states that he "was also retaliated against by the Defendant(s) for filing an unemployment benefits claim with the unemployment commission." (Pl.'s Resp. in Opp. at 9). The plaintiff notes the telephone calls made to the plaintiff's house and to the cell phone of the plaintiff's son, along with the allegedly threatening messages that were left. (Pl.'s Ex. 15 at 98-100) (Pl.'s Ex. 14). He also notes that Matthew and Cecil Johnson along with Bruce Johnson, Cecil's brother, all went to the plaintiff's home in an attempt to get the plaintiff to drop his claim for unemployment and any potential lawsuit. (Pl.'s Ex. 15) The plaintiff further asserts that the defendants threatened the plaintiff with criminal action for theft if he did not drop his claim for unemployment or the lawsuit. This Court also notes the testimony in the record that the defendants allegedly told the plaintiff's prospective employers that the plaintiff stole from the defendants. (Pl.'s Ex. 15 at 100-101).

Reviewing the record before the Court in a light most favorable to the plaintiff as non-moving party, this Court cannot conclude that there is no genuine issue of material fact concerning the claim for retaliation. There is evidence before the Court that creates a question of fact as to whether the defendants engaged in conduct that could constitute a cause of action under

9

29 U.S.C. § 215(a)(3). Accordingly, summary judgment based upon a failure to satisfy the factors of a claim for retaliation is denied.

### III.     Wrongful Termination

The plaintiff alleges the defendants terminated his employment in violation of a clear mandate of public policy. The plaintiff argues that the defendants wrongfully terminated the plaintiff's employment in retaliation for the plaintiff's reporting of the defendants' allegedly unlawful activity. The defendants have moved for summary judgment on this claim as to all defendants. For the reasons stated herein, this Court grants the defendants' motion as to the plaintiff's claim for wrongful termination.

In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985) the South Carolina Supreme Court recognized an exception to the doctrine of termination at will, noting, "Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." In that case, the court held that "the public policy exception is invoked, when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." Id. Further, this prohibition also extends "at least to legislatively defined 'Crimes Against Public Policy.'" Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91, 92 (S.C. 1992).

This Court holds that the plaintiff has failed to identify a public policy violation recoverable pursuant to South Carolina law under a theory of wrongful termination. Moreover, South Carolina case precedent establishes that a plaintiff may not recover under a theory of wrongful discharge where a remedy to the alleged misconduct is available under the FLSA. In Dockins v. Ingles Markets, Inc., 413 S.E.2d 18 (S.C. 1992) the South Carolina Supreme Court stated,

> When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy. Campbell v. Bi-Lo, 392 S.E.2d 477 (S.C. Ct. App. 1990). We hold this applies when the right is created by federal law as well as state law. Therefore, Dockins is limited to his remedy under the Fair Labor Standards Act.
>
> Dockins at 19.

Accordingly, this Court grants the defendants' motion for summary judgment as to the plaintiff's claim of wrongful discharge.

### IV. Agricultural Exemption

The defendants argue the plaintiff is not entitled to overtime pay because the employment activities he performed were predominately agricultural in nature.

Section 213 states, "The provisions of section 207 of this title shall not apply with respect to – any employee employed in agriculture . . . ." 29 U.S.C. § 213(b)(12). The FLSA defines "Agriculture" to include:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.
>
> 29 U.S.C. 203(f).

It is noted that Section 203(f) creates both a primary and secondary definition of agriculture. Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762 (1949). The secondary definition of agriculture "includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with such farming." Id. at 763. Further, "[E]xemptions are to be narrowly construed against the employers seeking to

11

assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).

After reviewing the record in a light most favorable to the nonmoving party, this Court cannot conclude as a matter of law that the work performed by the plaintiff fell within the "agricultural exemption" so as to preclude him from recovering overtime pay. The plaintiff has submitted sufficient evidence concerning his job responsibilities and the work he completed while employed by the defendants to create a genuine issue of material fact concerning whether the plaintiff was subject to the "agricultural exemption." Accordingly, this Court denies the plaintiff motion for summary judgment on this basis.

## CONCLUSION

For the reasons set forth herein, the defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. (Doc. # 41). Summary judgment is granted in favor of all defendants with respect to the plaintiffs claim for wrongful termination in violation of a clear mandate of public policy, and this claim is **DISMISSED**. This Court denies summary judgment as to all other grounds asserted by the defendants in their motion.

**IT IS SO ORDERED**.

                                                      s/Terry L. Wooten
                                                     TERRY L. WOOTEN
                                                     United States District Judge

January 4, 2011
Florence, South Carolina